996 P.2d 268

STATE of Hawai'i, Plaintiff–Appellee,

v.

Bernd FRIEDMAN, Defendant–Appellant.

No. 22504.

Supreme Court of Hawai'i.

April 6, 2000.

MOON, C.J., LEVINSON, NAKAYAMA, and RAMIL, JJ. and Intermediate Court of Appeals Associate Judge WATANABE, Assigned by Reason of Vacancy.

Opinion of the Court by MOON, C.J.

Subsequent to a bench trial in the family court of the second circuit, defendant-appellant Bernd Friedman appeals his conviction of and sentence for abuse of family and household members (family abuse), in violation of Hawai'i Revised Statutes (HRS) § 709–906 (1993 & Supp.1999).[1] Friedman appeals on several grounds: (1) the trial court erred when it failed to obtain a valid waiver of his constitutional right to a trial by jury; (2) the trial court plainly erred when it convicted him even though there was insufficient evidence to negative the justification defense of choice of evils; and (3) the trial court erred when it convicted him after finding mutual affray because (a) mutual affray is a defense or mitigating factor for family abuse, (b) assault in the third degree committed in mutual affray, a petty misdemeanor under HRS § 707–712(2) (1993) [hereinafter, petty misdemeanor assault],[2] is a lesser included offense of family abuse, (c) a conviction of family abuse deprives him equal protection of the law, and (d) a conviction of family abuse violates the holding in *State v. Modica*, 58 Haw. 249, 567 P.2d 420 (1977). For the reasons discussed below, we affirm the conviction and sentence of the trial court.

Joyce K. Matsumori–Hoshijo, Deputy Public Defender, on the briefs, for defendant-appellant.

Richard K. Minatoya, Deputy Prosecuting Attorney, on the briefs, for plaintiff-appellee.

## I. BACKGROUND

On February 26, 1999, Friedman, accompanied by counsel, was arraigned for the

1. HRS § 709–906 provides, in relevant part, that:

    (1) It shall be unlawful for any person, singly or in concert, to physically abuse a family or household member....
    For the purposes of this section, "family or household member" means spouses or reciprocal beneficiaries, former spouses or reciprocal beneficiaries, persons who have a child in common, parents, children, persons related by consanguinity, and persons jointly residing or formerly residing in the same dwelling unit.
    ....
    (5) Abuse of a family or household member [is a] misdemeanor ... and the person shall be sentenced as follows:

    (a) For the first offense the person shall serve a minimum jail sentence of forty-eight hours; and

    ....
    (11) This section shall not operate as a bar against prosecution under any other section of this Code in lieu of prosecution for abuse of a family or household member.

2. HRS § 707–712(2) provides that "[a]ssault in the third degree is a misdemeanor unless committed in a fight or scuffle entered into by mutual consent, in which case it is a petty misdemeanor."

offense of family abuse. At Friedman's arraignment, the following colloquy took place:

[DEFENSE COUNSEL]: [Defense counsel] appearing on behalf and with Bernd Friedman, Your Honor, who is present.

The record should reflect that we are in receipt of a written complaint in this matter. We're going to waive an oral reading of the charge, enter a plea of not guilty.

I spoke with Mr. Friedman prior to this hearing, I did explain to him the differences between a jury trial and judge trial.

My understanding is, his intent is to waive that right to jury trial. And we would ask that this matter be set for both pre-trial and trial here in the Family Court.

THE COURT: All right, Mr. Friedman. Do you understand what [Defense counsel] has just told me?

[FRIEDMAN]: Yes, I do.

THE COURT: You're going to enter a plea of not guilty to the complaint in this case, you're also going to give up your right to a jury trial; is that correct?

[FRIEDMAN]: Yes.

THE COURT: And, you understand what a jury trial's about?

[FRIEDMAN]: Yes.

THE COURT: And can you explain in your own words what you understand that to mean?

[FRIEDMAN]: A jury trial is where the outcome of the—the results of whether it's guilty or not is to be determined by 12 adults instead of a judge.

The COURT: So by waiving that right means that your case will be decided by a judge, the judge alone is to decide your guilt or innocence.

[FRIEDMAN]: Yes, Your Honor.

THE COURT: Is your decision to waive your right to jury trial something you thought about and decided to do yourself voluntarily.

[FRIEDMAN]: Yes.

THE COURT: All right. Since a waiver to jury trial has been entered, this matter will be set for trial here in the Family Court. . . .

At the April 13, 1999 bench trial, Sachi Friedman (Sachi), Friedman's wife, testified as follows. On February 13, 1999, at approximately 8:00 or 9:00 p.m., following their child's birthday party, Sachi went onto their lanai to smoke marijuana. Friedman came outside and grabbed her bag of marijuana. Sachi testified that she "automatically" pushed Friedman away from her. Friedman then grabbed Sachi's hair, which caused her pain, and pulled her back into their residence to talk about her alleged drug abuse.

Sachi further testified that she was upset about Friedman pulling her hair and that, once inside their residence, she began to hit Friedman. Friedman also hit Sachi on her face, arms, and legs with an open hand, which also caused her pain. During the altercation, Sachi attempted to walk out the door, but Friedman pushed her onto the sofa. Sachi testified that, after the brief altercation had ended, Friedman called the police to their residence. Sachi recalled speaking to a police officer, but did not recall speaking specifically with Officer Kaupalolo, nor the contents of the conversation. Finally, Sachi testified that: (1) she and Friedman continued to reside together; (2) she did not wish to see Friedman prosecuted; and (3) she had signed a withdrawal of prosecution form.

Officer Kaupalolo briefly testified as to the events of that evening. Officer Kaupalolo was dispatched to the Friedman's residence to respond to a "possible abuse call." Upon his arrival, Officer Kaupalolo noticed that Sachi was "very distraught and crying." Sachi informed Officer Kaupalolo that she and her husband had been fighting and that her head was sore from being pulled by her hair.

Finally, Friedman's testimony substantiated Sachi's testimony of the altercation. Friedman testified that his concern regarding Sachi's marijuana use has been ongoing for a number of years. Friedman testified that, when he saw that Sachi was about to smoke marijuana, he grabbed the bag of marijuana and dumped it over the lanai railing. Friedman neither denied pulling Sachi by her hair into their residence nor hitting Sachi with an open hand, but explained that

his conduct was motivated by his attempt to address Sachi's alleged drug abuse and its effects upon his family. Friedman further testified that, during the altercation, in addition to being hit by Sachi, Sachi allegedly kicked him once in the groin. After the altercation ended five to ten minutes later, while Sachi telephoned her father by cellular phone, Friedman phoned the police to report that Sachi had smoked marijuana.

Based upon the foregoing evidence, the trial court rendered the following verdict:

[The court is] satisfied that the state has established the following elements of [sic] beyond a reasonable doubt as to the complaint in this case; that on February 13th of 1999 the defendant, Bernd Friedman, was a family or household member, was living with his wife Sachi Friedman, that on the date within their residence Mr. Friedman did approach his wife who, apparently, was outside of the unit or house.... He observed her to be [sic] about to smoke some marijuana.

He was upset because he considered that to be a problem within their family. He got a hold of the bag of marijuana, dumped it out over the lanai railing or dumped it out. At that point he was, perhaps, pushed by his wife. Whether or not that occurred there really is not important. He, as a result of her acts, did grab a hold of her by the hair, pulling her back into the house or the apartment.

Thereafter, [the court] think[s] the testimony of both party [sic] would indicate that they began hitting and slapping each other, they were angry, both of them were angry at what was going on. Apparently there was a real marital problem between the two of them.

At this point [the court] agree[s] with the prosecution's argument that the acts of the party [at] that point would constitute mutual affray.

There is no indication Mr. Friedman had to take any acts, as far as pulling his wife by the hair and/or slapping her or in any way continue to pull at her or push at her that was necessitated by her acts.

Rather, the Court finds that these two people got angry at each other, they got out of control, they simply were hitting each other, slapping on each other. That does constitute mutual affray.

The court further finds that the acts of the defendant did cause some pain to his wife.

She testified when she was pulled by the hair it did hurt a little bit, and she also indicated that being grabbed and slapped after it was over, she did feel some pain from that; although, it didn't appear to be something that resulted in any serious injuries to her. But, nevertheless, those acts would constitute abuse.

There being no defense or justification from the acts of the defendant in this case, a mutual affray by case law has clearly been determined not to be any type of justification for abusive acts in this case, the pain that was caused by Mr. Friedman towards his wife Sachi.

Accordingly, the trial court convicted Friedman of family abuse and sentenced Friedman to forty-eight hours of imprisonment with credit for time served, one year of probation, counseling, and a $50.00 Criminal Injuries Compensation Fee. Friedman timely appeals his conviction and sentence.

## II. STANDARDS OF REVIEW

### A. Constitutional Question

The validity of a criminal defendant's waiver of his or her right to a jury trial presents a question of state and federal constitutional law. Likewise, the validity of a statute based upon equal protection and due process of law is a question of constitutional law. "We answer questions of constitutional law by exercising our own independent constitutional judgment based on the facts of the case. Thus, we review questions of constitutional law under the right/wrong standard." State v. Hanapi, 89 Hawai'i 177, 182, 970 P.2d 485, 490 (1998) (quoting State v. Mallan, 86 Hawai'i 440, 443, 950 P.2d 178, 181 (1998)) (citations omitted).

### B. Plain Error

Friedman's failure to properly raise the issue whether the prosecution negated

the choice of evils defense does not foreclose our consideration of the issue because this court may *sua sponte* notice plain errors. *See State v. Alston,* 75 Haw. 517, 529, 865 P.2d 157, 164 (1994). "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Hawai'i Rules of Penal Procedure Rule 52(b) (1996); *see also State v. Clark,* 83 Hawai'i 289, 296, 926 P.2d 194, 201 (1996). "[T]his Court will apply the plain error standard of review to correct errors which seriously affect the fairness, integrity, or public reputation of judicial proceedings, to serve the ends of justice, and to prevent the denial of fundamental rights." *State v. Vanstory,* 91 Hawai'i 33, 42, 979 P.2d 1059, 1068 (1999) (quoting *State v. Sawyer,* 88 Hawai'i 325, 330, 966 P.2d 637, 642 (1998)) (citations omitted).

## C. *Questions of Law*

◼ Whether assault in the third degree committed in mutual affray, HRS § 707–712(2), is a lesser included offense of family abuse, HRS § 709–906, presents a question of law. Similarly, whether mutual affray is a mitigating factor or defense to family abuse presents a question of law. We review questions of law de novo under the right/wrong standard of review. *See Francis v. Lee Enterprises, Inc.,* 89 Hawai'i 234, 236, 971 P.2d 707, 709 (1999) (citations omitted).

## III. *DISCUSSION*

### A. *Defendant's Voluntary Waiver of Right to Jury Trial*

On appeal, Friedman contends that his colloquy with ·the trial court at his arraignment and plea hearing on February 26, 1999, was insufficient to inform him of his right to a jury trial, and, thus, he involuntarily waived that right. We disagree.

◼ Hawai'i Rules of Penal Procedure (HRPP) Rule 5(b)(1) (1996) requires that, in appropriate cases, the district court shall "inform the defendant of the right to jury trial in circuit court[.]" "'Appropriate cases' arise whenever the accused has a constitutional right to a jury trial." *State v. Ibuos,* 75 Haw. 118, 120, 857 P.2d 576, 577 (1993)

(citations omitted); *see also* article I, section 14, of the Hawai'i Constitution (1978); sixth amendment to the United States Constitution. In the criminal context, the statutory right to a twelve-person jury trial arises whenever · a defendant may be subjected to imprisonment for six months or more. HRS § 806–60 (1993) ("Any defendant charged with a serious crime shall have the right to trial by a jury of twelve members. 'Serious crime' means any crime for which the defendant may be imprisoned for six months or more."); *see Ibuos,* 75 Haw. at 120, 857 P.2d at 577. A defendant may, orally or in writing, voluntarily waive his or her right to trial by jury. *Id.* at 121, 857 P.2d at 578 (citing HRPP Rule 5(b)(3) ("In appropriate cases, the defendant shall be tried by jury in the circuit court unless the defendant waives in writing or orally in open court his right to trial by jury.")). For a valid waiver of the right to a jury trial, the trial court has a duty to inform the accused of that constitutional right. *Ibuos,* 75 Haw. at 120, 857 P.2d at 577 (citing *State v. Swain,* 61 Haw. 173, 176, 599 P.2d 282, 284 (1979)). The colloquy in open court informing a defendant of his right to a jury trial at arraignment serves several purposes: "(1) it more effectively insures voluntary, knowing and intelligent waivers ...; (2) it promotes judicial economy by avoiding challenges to the validity of waivers on appeal ...; and (3) it emphasizes to the defendant the seriousness of the decision[.]" *United States v. Cochran,* 770 F.2d 850, 851–52 (9th Cir.1985) (citations omitted); *see also State v. Young,* 73 Haw. 217, 221–22, 830 P.2d 512, 514 (1992) (citing *Cochran* for the proposition that the preferred method of obtaining a valid written or oral waiver from the defendant occurs at arraignment). The failure to obtain a valid waiver of this fundamental right constitutes reversible error. *Ibuos,* 75 Haw. at 120, 857 P.2d at 577.

◼ A waiver is the knowing, intelligent, and voluntary relinquishment of a known right. *See Reponte v. State,* 57 Haw. 354, 361, 556 P.2d 577, 583 (1976) (citation omitted). Thus, "[t]o determine whether a waiver was voluntarily and intelligently undertaken, this court will look to the totality of facts and circumstances of each particular

case." *State v. Vares,* 71 Haw. 617, 621, 801 P.2d 555, 557–58 (1990) (citing *State v. Dicks,* 57 Haw. 46, 49, 549 P.2d 727, 730 (1976)) (noting that waiver of the right to counsel is reviewed under the totality of the circumstances); *see also State v. Merino,* 81 Hawai'i 198, 221, 915 P.2d 672, 695 (1996). Where it appears from the record that a defendant has voluntarily waived a constitutional right to a jury trial, the defendant carries the burden of demonstrating ·by a preponderance of the evidence that his/her waiver was involuntary. *See Ibuos,* 75 Haw. at 121, 857 P.2d at 578.

■ Because a conviction of family abuse under HRS § 709–906 is a misdemeanor, which carries a possible one year term of imprisonment, Friedman has the right to a trial by jury. *See id.* at 120, 857 P.2d at 577. Friedman, however, contends that his jury waiver was not made voluntarily, knowingly, and intelligently. The record reflects that, in open court, Friedman orally waived his right to trial by jury during a colloquy with the trial court. Thus, Friedman bears the burden of demonstrating by a preponderance of the evidence that his oral waiver was involuntarily given. *See id.* at 121, 857 P.2d at 578.

Friedman cites *United States v. Duarte–Higareda,* 113 F.3d 1000 (9th Cir.1997), to support his contention that his colloquy was insufficient for him to have voluntarily waived his right to a jury trial. In *Duarte–Higareda,* the defendant, who was not fluent in English, had signed a jury waiver form, preprinted entirely in English, but the record was silent as to whether the written waiver had been translated into Spanish for him. 113 F.3d at 1002. Subsequently, at his arraignment, defendant's counsel also informed the district court that defendant wished to waive his right to a jury trial. *Id.* Although a Spanish interpreter was present to assist the defendant, the district court never direct·ly addressed the defendant to verify his understanding of the jury waiver. The defendant was found guilty following a bench trial and then appealed. *Id.*

The United States Court of Appeals for the Ninth Circuit vacated the conviction and sentence, stating that the record indicated that the defendant possessed the "special disadvantage or disability" of not speaking English, which bore upon his ability to understand the waiver of a jury trial, thereby requiring the district court to conduct a colloquy with the defendant to ensure a voluntary waiver. *Id.* at 1003. Thus, the language barrier was a " 'salient fact' that gave notice to the district court that Duarte's waiver 'might be less than knowing and intelligent.' " *Id.* The Ninth Circuit noted that, to ensure a voluntary waiver, the district court should have directly informed the defendant that "(1) twelve members of the community compose a jury, (2) the defendant may take part in jury selection, (3) a jury verdict must be unanimous, and (4) the court alone decides guilt or innocence if the defendant waives a jury trial." *Id.* at 1002 (citing *Cochran,* 770 F.2d at 853).

Friedman contends that his jury waiver could not be voluntary or knowing because the trial court did not specifically advise him that a jury is comprised of twelve members, that he could take part in jury selection, or· that a jury verdict must be unanimous. Thus, Friedman appears to urge this court to adopt a "bright line rule" that a jury waiver can never be voluntary and knowing if a trial court fails to advise a defendant of any of the four aspects of a jury trial, as expressed in the colloquy suggested in *Duarte–Higareda.* As previously noted, however, *Duarte–Higareda* does not stand for the proposition that its suggested colloquy is required in every case. *Duarte–Higareda,* 113 F.3d at 1003 (citing *Cochran,* 770 F.2d at 853). Although we are mindful of a criminal defendant's fundamental right to a jury trial and advise the trial court to engage in such a colloquy to aid in ensuring voluntary waivers, we decline to adopt Friedman's contention that the *Duarte–Higareda* colloquy is constitutionally required in every case.

■ Rather than adhering to a rigid pattern of factual determinations, we have long observed that the validity of a waiver concerning a fundamental right is reviewed under the totality of the facts and circumstances of the particular case. *See State v. Luton,* 83 Hawai'i 443, 454, 927 P.2d 844, 855 (1996) (noting that a waiver of a defendant's Miranda rights is examined from the entire record and under the totality of the circum-

stances) (citations omitted); *Merino*, 81 Hawai'i at 221, 915 P.2d at 695 (noting that, in determining whether waiver of fundamental right to attorney was voluntarily undertaken, this court would look to totality of facts and circumstances of particular case); *In the Interest of Jane Doe, Born on May 26, 1979*, 77 Hawai'i 46, 50, 881 P.2d 533, 537 (1994) (noting that whether a juvenile defendant voluntarily and knowingly waives his/her right to counsel is reviewed based upon a totality of the circumstances). Likewise, we review the validity of a defendant's waiver of his/her right to a jury trial under the totality of the circumstances surrounding the case, taking into account the defendant's background, experience, and conduct. *See Reponte*, 57 Haw. at 361, 556 P.2d at 583. In the present case, Friedman has not pointed to any facts contained in the record demonstrating that his oral waiver at his arraignment was not voluntary and knowing. Rather, the colloquy between Friedman and the trial court suggests that Friedman was aware of his constitutional right to a trial by jury. Friedman did not simply acknowledge his right to a jury trial with a simple "yes"; rather, Friedman articulated to the trial court that "[a] jury trial is where the outcome of . . . whether it's guilty or not is to be determined by 12 adults instead of a judge." Additionally, the trial court specifically informed Friedman that a judge would be trying his case if he waived his jury trial right. The record also reflects that, at the arraignment, Friedman was represented by competent counsel, who informed the court that he had previously "explain[ed] to [Friedman] the differences between a jury trial and judge trial"; moreover, Friedman acknowledged his attorney's representation. Finally, Friedman affirmatively indicated to the trial court that his waiver of the right to a jury trial was voluntary and a result of his own reflection. Although the trial court did not inform Friedman of certain aspects of the right to a jury trial—the requirement of a unanimous verdict and the right to participate in jury selection [3]—Friedman's mere assertion that he

did not possess a "complete understanding of his jury trial right," by itself, does not establish that his jury waiver was not voluntary and knowing. Under the totality of the circumstances, Friedman has not met his burden of demonstrating that his waiver was involuntary. He has failed to direct us to any "salient fact" bearing upon his ability to understand his jury waiver that would have created the need for an extensive colloquy by the trial court, and, thus, his argument is without merit. *See Cochran*, 770 F.2d at 853 (holding that the district court's failure to conduct a colloquy informing the defendant of all aspects of the right to a trial by jury does not *ipso facto* constitute reversible error); *United States v. DeRobertis*, 715 F.2d 1174, 1186 (7th Cir.1983) (holding that defendant's jury trial waiver was voluntary and knowing where he was advised by the court that (1) a jury is composed of twelve community members and (2) a judge alone decides guilt or innocence in a bench trial, but was not informed that he may participate in jury selection and a guilty verdict in a jury trial requires a "substantial majority" of the jury), *cert. denied*, 464 U.S. 1072, 104 S.Ct. 982, 79 L.Ed.2d 219 (1984); *State v. Redden*, 199 W.Va. 660, 487 S.E.2d 318, 326 (1997) (holding that trial court's colloquy that only advised the defendant that judge alone decides guilt or innocence in a bench trial was sufficient for the defendant to knowingly and voluntarily waive his right to a jury trial under the totality of the circumstances); *Commonwealth v. Schofield*, 391 Mass. 772, 463 N.E.2d 1181, 1184 (1984) (holding that colloquy informing defendant of his right to a jury trial composed of twelve members or a bench trial in which the judge alone determines guilt is evidence was sufficient for defendant to intelligently and voluntarily waive his right to a jury trial). Accordingly, on the record before us, we hold that Friedman knowingly and voluntarily waived his right to a jury trial.

### B. *Choice of Evils Defense*

■ For the first time on appeal, Friedman argues that he presented sufficient evi-

---

3. Friedman also argues that the trial court failed to inform him that a jury is composed of twelve members. However, inasmuch as Friedman informed the trial court that a jury is composed of twelve members, his assertion that he was unaware of this particular aspect of a jury trial is without merit.

dence of the choice of evils defense under HRS § 703–302 (1993),[4] which required the prosecution to negative the choice of evils defense beyond a reasonable doubt under HRS § 702–205 (1993),[5] and, therefore, the trial court plainly erred when it failed to conclude that the prosecution did not negative the choice of evils defense. Hence, Friedman now argues that his abuse was justified because he "reasonably believed that his wife's use of marijuana was a harm greater than his use of force to prevent her drug use."

The choice of evils defense is defined entirely by HRS § 703–302 without regard to common law "considerations." *See State v. Maumalanga*, 90 Hawai'i 58, 64, 976 P.2d 372, 378 (1998). HRS § 703–302(1)(a) provides that "[c]onduct which the actor believes is necessary to avoid an imminent harm or evil to the actor or to another is justified provided that . . . [t]he harm or evil sought to be avoided by such conduct is greater than that sought to be prevented by the law defining the offense charged[.]" The choice of evils defense, however, is limited in its application and, thus, unavailable under certain circumstances. *See* HRS § 702–302 (choice of evils defense is unavailable where: (1) the HRS or any other law provides a defense for the specific situation involved; (2) there plainly appears a legislative purpose to exclude the defense; and (3) the state of mind for the offense charged is either reckless or negligent and the trier of fact finds that the defendant was (a) reckless or negligent in bringing about the situation requiring the choice of evils or (b) reckless or negligent in

evaluating the necessity for his or her conduct).

Friedman maintains that his abuse was justified to prevent Sachi from the imminent, greater evil of marijuana use. The choice of evils defense, however, could not apply in the present case because Friedman had dumped the marijuana over the lanai railing, thereby eliminating any threat of imminent harm as required by HRS § 703–203(1)(a). Thus, no imminent harm was present to justify pulling Sachi by her hair, pushing her, or hitting her with an open hand. If Friedman wished to address Sachi's marijuana use, physical abuse was not a legally justifiable means. Accordingly, we hold that, because there was no threat of imminent harm, the trial court did not err in refusing to consider the choice of evils defense.

## C. *Mutual Affray*

Friedman next contends that the trial court erred in convicting him of family abuse, a misdemeanor, after making a finding of mutual affray. In support of his contention, Friedman argues that the trial court should have convicted him of petty misdemeanor assault because: (1) a finding of mutual affray is a defense or mitigating factor to family abuse; (2) petty misdemeanor assault is a lesser included offense of family abuse; (3) a conviction of family abuse rather than petty misdemeanor assault denies him equal protection of the law; and (4) pursuant to the holding in *State v. Modica*, 58 Haw. 249, 567 P.2d 420 (1977), conviction of family abuse rather than petty misdemeanor assault de-

4. HRS § 703–302, Choice of Evils, provides in pertinent part:

(1) Conduct which the actor believes to be necessary to avoid an imminent harm or evil to the actor or to another is justifiable provided that:
(a) The harm or evil sought to be avoided by such conduct is greater than that sought to be prevented by the law defining the offense charged; and
(b) Neither the Code nor other law defining the offense provides exceptions or defenses dealing with the specific situation involved; and
(c) A legislative purpose to exclude the justification claimed does not otherwise plainly· appear.

(2) When the actor was reckless or negligent in bringing about the situation requiring a choice of harms or evils or in appraising the necessity for the actor's conduct, the justification afforded by this section is unavailable in a prosecution for any offense for which recklessness or negligence, as the case may be, suffices to establish culpability.

5. HRS § 702–205 provides:
The elements of an offense are such (1) conduct, (2) attendant circumstances, and (3) results of conduct, as:
(a) Are specified by the definition of the offense, and
(b) Negative a defense (other than a defense based on the statute of limitations, lack of venue, or lack of jurisdiction).

nies him equal protection and due process of the law. These arguments, however, are without merit.

### 1. Mutual Affray is not a Defense or Mitigating Factor of Family Abuse.

■ Our holding in *State v. Coyle*, 71 Haw. 165, 166, 785 P.2d 1320 (1990), is dispositive of Friedman's argument that a finding of mutual affray is a defense to family abuse. In *Coyle*, we specifically held that mutual affray is not a defense to abuse of family and household member, noting that "[b]eing guilty of a lesser included offense is not a defense to a conviction of the greater offense." *Id.* Therefore, even though the trial court found mutual affray in the present case, the fact that Friedman may be convicted of petty misdemeanor assault does not protect him from a charge and conviction of family abuse. *Id.*

### 2. Petty Misdemeanor Assault is not a Lesser Included Offense.

■ Friedman argues that, under HRS § 701–109(4)(a) (1993), petty misdemeanor assault is a lesser included offense of family abuse. Pursuant to HRS § 701–109(4)(a), the general rule is that "an offense is included if it is impossible to commit the greater without also committing the lesser." *State v. Burdett*, 70 Haw. 85, 87–88, 762 P.2d 164, 166 (1988). In applying HRS § 701–109(4)(a), we have previously held that several factors may be considered in determining whether an offense is a lesser included offense of another: (1) the degree of culpability; (2) the legislative statutory scheme; and (3) the end result. *Alston*, 75 Haw. at 533, 865 P.2d at 166; *see also State v. Matautia*, 81 Hawai'i 76, 82, 912 P.2d 573, 579 (App.1996).

■ "Regarding the degree of culpability, the rule is that the lesser included offense cannot have a mental state greater than or different from that which is required for the charged offense." *Alston*, 75 Haw. at 534, 865 P.2d at 166 (emphasis omitted). Petty misdemeanor assault and family abuse possess the same degree of culpability—a defendant must have acted intentionally, knowingly, or recklessly. However, because these offenses differ with regard to the "legislative statutory scheme" and the "end result," the requirements of HRS § 701–109(4)(a) are not met.

The legislative statutory scheme of both the greater and lesser offense should reflect a legislative intent to protect similar societal interests. *Alston*, 75 Haw. at 534, 865 P.2d at 166. In the present case, the societal interests in enacting the offenses of petty misdemeanor assault and family abuse are distinct; the former is found in chapter 702, Offenses Against The Person, whereas the latter is found in chapter 709, Offenses Against The Family And Against Incompetents. *Id.* (citing *Burdett*, 70 Haw. at 89, 762 P.2d at 167) (noting that the classification of two crimes under different penal chapters indicates the legislature's intent to protect different societal interests and that one crime would not be the lesser included of another); *cf. State v. Freeman*, 70 Haw. 434, 774 P.2d 888 (1989) (holding that, although within the same penal chapter, second degree theft is not a lesser included offense of fraudulent use of a credit card after determining that the legislature intended to protect different societal interests by enacting a separate statute for fraudulent use of a credit card, rather than incorporating it into second degree theft). In addition, although both statutes protect against injury, the legislative purpose in enacting family abuse reflects the State of Hawaii's (State) concern for the increasing frequency of family abuse and its impact upon children and the community.

Your Committee is vitally concerned with effectively addressing and combatting family violence. The Police Department, City and County of Honolulu, reports that approximately 800 "domestic" incidents are received every month. Violence within the family can no longer be ignored as "no one else's business". The effects of family violence is spread far beyond the confines of the family. Children, for instance, who are victims of or are witnesses to violence learn to view it as accepted and normal behavior and may perpetuate the violence as adults. This bill takes an important step in discrediting that notion and in mitigating family violence and its effect on the community.

Sen. Stand. Comm. Rept. No. 67, in 1985 Senate Journal at 931–932; *see also* Conf. Comm. Rep. No. 6, in 1985 Senate Journal at 848; Conf. Comm. Rep. No. 15, in 1985 House Journal at 887–888; *see also Freeman,* 70 Haw. at 439, 774 P.2d at 891 (noting that the legislature enacted credit card offenses in recognition of "the societal trend in the increasing use and criminal abuse of credit cards and therefore increased credit card offense penalties to 'discourage misuse of the cards.' ").

Finally, the "lesser included offense should produce the same end result as the greater charged offense." *Alston,* 75 Haw. at 535, 865 P.2d at 166–67. Here, it cannot be said that the offenses produce the same end result. Petty misdemeanor assault does not require that the victim be a "family or household member," but does require a finding of mutual affray. A finding of mutual affray, however, is completely irrelevant in establishing family abuse. *State v. Coyle,* 71 Haw. at 166, 785 P.2d at 1320 (noting that family abuse does not possess a statutory provision that mutual affray is a mitigating defense, but petty misdemeanor assault does possess such a provision). Therefore, petty misdemeanor assault is not a lesser included offense of family abuse under HRS § 701–109(4)(a).

Although Friedman does not argue that petty misdemeanor assault may be an included offense pursuant to HRS § 701–109(4)(c),[6] this court may address the issue as plain error where the substantive rights of a defendant are adversely affected. *See Alston,* 75 Haw. at 536, 865 P.2d at 167. In *Alston,* we stated that

> "Subsection (c) differs from (a) in that there may be some dissimilarity in the facts necessary to prove the lesser offense, but the end result is the same." *State v. Freeman,* 70 Haw. 434, 440, 774 P.2d 888, 892 (1989)(citing commentary to HRS § 701–109). Under subsection (c) analysis, the following factors are considered: (1) the degree of culpability; (2) the degree or

risk of injury; and (3) the end result. *Burdett,* 70 Haw. at 90, 762 P.2d at 167 (citation omitted).

*Id.* at 536, 865 P.2d at 167.

In the present case, pursuant to HRS § 701–109(4)(c), petty misdemeanor assault may be a lesser included of family abuse if there is a less serious injury to the same public interest. *See id.* However, as previously discussed, petty misdemeanor assault and family abuse involve injuries to distinct societal interests and legislative schemes. Moreover, the end results of family abuse and petty misdemeanor assault are distinct in that the end result of family abuse requires physical abuse to a family or household member, whereas the end result of petty misdemeanor assault does not. Thus, we further hold that petty misdemeanor assault cannot be a lesser included offense of family abuse under HRS § 701–109(4)(c). Accordingly, there is no plain error in the present case.

### 3. Equal Protection

■■■■■ Friedman next challenges the constitutionality of the family abuse statute, HRS § 709–906, arguing that he was denied equal protection of the law because no rational basis exists to discriminate between a household member and a member of the general public that would justify the misdemeanor conviction of family abuse. We apply a two-step test to determine whether a statute passes constitutional scrutiny under the rational basis test. *Del Rio v. Crake,* 87 Hawai'i 297, 305, 955 P.2d 90, 98 (1998). "First, we must ascertain whether the statute was passed for a legitimate governmental purpose." *Id.* (citations omitted). Second, if the purpose is legitimate, the court must determine whether the statute rationally furthers that legitimate government interest. *Id.* In making that inquiry, "a court will not look for empirical data in support of the statute. It will only seek to determine *whether any reasonable justification can be conceived to uphold the legislative enactment." Id.* (emphasis in original) (citing

6. Under HRS § 701–109(4)(c), an offense is included when "[i]t differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, prop-

erty, or public interest or a different state of mind indicating a lesser degree of culpability suffices to establish its commission."

*Housing Fin. & Dev. Corp. v. Castle,* 79 Hawai'i 64, 86, 898 P.2d 576, 598 (1995)). In other words, could "the Legislature [have] rationally ... believed that the statute would promote its objective." *Del Rio,* 87 Hawai'i at 305, 955 P.2d at 98.

In satisfying the first prong of the rational basis test, as the prosecution points out, the legislative purpose of HRS § 709–906 is to discredit the notion that family violence is "no one else's business," to mitigate the 800 incidents of family violence that occurred each month, and to limit the effects of family violence upon the community. Sen. Stand. Comm. Rep. No. 67, in 1985 Senate Journal at 931–932; *see also* Conf. Comm. Rep. No. 6, in 1985 Senate Journal at 848; Conf. Comm. Rep. No. 15, in 1985 House Journal at 887–888. Because the State has a legitimate interest in protecting the health, safety, and welfare of its citizens, the enactment of HRS § 709–906 to address family violence within the community is certainly "legitimate" in protecting Hawai'i citizens. *See, e.g., State v. Baker,* 56 Haw. 271, 281, 535 P.2d 1394, 1400 (1975) (noting that criminalization of marijuana is within the legislature's police power); *State v. Buch,* 83 Hawai'i 308, 926 P.2d 599 (1996) (noting that, pursuant to its police powers, the legislature may define criminal offenses without requiring proof of a specific criminal intent).

Under the second prong, we determine whether HRS § 709–906 is rationally related to the State's legitimate interest in curbing family violence. In this regard, we have noted that "equal protection does not mandate that all laws apply with universality to all persons; the State cannot function without classifying its citizens for various purposes and treating some differently from others. The legislature may not, however, in exercising this right to classify, do so arbitrarily." *Washington v. Fireman's Fund Ins. Cos.,* 68 Haw. 192, 199, 708 P.2d 129, 134 (1985) (brackets, quotation marks, and citations omitted); *cert. denied,* 476 U.S. 1169, 106 S.Ct. 2890, 90 L.Ed.2d 977 (1986). The issue then is whether the legislature could have believed that the classification of family or household members under HRS § 709– 906 would rationally further its interest in mitigating family violence.

Inasmuch as family and household members are the very class of people whose abusive conduct the statute was designed to prevent, that classification is rationally related to the State's interest in curbing family violence. The legislature reasonably believed "that extending the protection of [HRS § 709–906] to family and household members [would] assist in mitigating family violence and its effect on the community." Conf. Comm. Rep. No. 6, in 1985 Senate Journal at 848. The equal protection clause does not prevent Friedman, as a family member, from being classified for any reason, but rather protects him from arbitrary state classification in seeking to deter family violence. Because including family and household members within the scope of HRS § 709–906 may reduce or deter family violence by imposing upon violators greater criminal punishments than criminal assault, the State's classification of family and household members is not arbitrary or capricious and, therefore, rationally related to the State's interest in preventing incidents of family violence.

Accordingly, we hold that Friedman's equal protection rights under Article I, section 5 of the Hawai'i Constitution and the fourteenth amendment to the United States Constitution were not violated.

### 4. *State v. Modica* Argument

██ Finally, Friedman contends that pursuant to our holding in *State v. Modica,* 58 Haw. 249, 567 P.2d 420 (1977), his equal protection and due process rights were violated by convicting him of family abuse, rather than petty misdemeanor assault.

In *Modica,* we held that, "[w]here the same act committed under the same circumstances is punishable either as a felony or as a misdemeanor, under either of two statutory provisions, and the elements of proof essential to either conviction are exactly the same, a conviction under the felony statute would constitute a violation of defendant's right to due process and the equal protection of the laws." *Id.* at 251, 567 P.2d at 422. Assuming, arguendo, that *Modica* applies analogously where the punishment under different

statutory provisions involves a misdemeanor and petty misdemeanor, Friedman's constitutional rights would be violated only if a violation of the lesser offense would "invariably and necessarily" constitute a violation of the greater offense. *Id.* at 250, 567 P.2d at 421. However, petty misdemeanor assault would not "invariably and necessarily" constitute a violation of family abuse inasmuch as the latter requires the additional element of "family or household member" and does not contemplate mutual affray as a mitigating factor or defense. Because a person can commit the offense of petty misdemeanor assault without committing family abuse, the *Modica* rule is not implicated. Therefore, Friedman's argument is without merit.

### IV. *CONCLUSION*

Based upon the foregoing, we affirm the conviction and sentence of the trial court.