17 P.3d 862

STATE of Hawai'i, Plaintiff–Appellee,

v.

Jason RUMBAWA, Defendant–Appellant,

and

Michael Maristela, Defendant.

No. 22681.

Intermediate Court of Appeals of Hawai'i.

Jan. 29, 2001.

As Amended March 27, 2001.

Samuel P. King, Jr., Honolulu, on the briefs, for Defendant–Appellant.

Bryan K. Sano, Deputy Prosecuting Attorney City and County of Honolulu, Associate Judge, on the briefs, for Plaintiff–Appellee.

BURNS, C.J., WATANABE, and FOLEY, JJ.

Opinion of the Court by FOLEY, J.

Defendant–Appellant Jason Rumbawa (Rumbawa) was charged by complaint with the following:

Count 1, Attempted Murder in the First Degree in violation of Hawai'i Revised Statutes (HRS) §§ 705–500, 707–701(1)(b) and 706–656 (1993);

Count 2, Attempted Murder in the Second Degree in violation of HRS §§ 705–500, 707–701.5, and 706–656 (1993);

Counts 3–6, Terroristic Threatening in the First Degree in violation of HRS § 707–716(1)(d) (1993); and

Count 7, Place to Keep Pistol or Revolver in violation of HRS § 134–6(c) and (e) (1993).

Pursuant to a jury-waived trial, Rumbawa was acquitted as to Count 1; convicted of the included offense of Reckless Endangering in the First Degree in violation of HRS § 707–713 (1993) as to Count 2; convicted as to Counts 3–6 as charged; and convicted as to Count 7 as charged.

Rumbawa contends the circuit court erred in finding him guilty of Reckless Endangering in the First Degree instead of Reckless Endangering in the Second Degree (Count 2), and four counts of Terroristic Threatening in the First Degree instead of one count (Counts 3–6). We disagree with Rumbawa and affirm the June 15, 1999, judgment of the circuit court.

## I. BACKGROUND

On August 15, 1998, Janet Medrano (Medrano) and Jason Santiago (Santiago) had a birthday party at the Mililani Rec Center III (Rec Center) for Heaven, their one-year-old daughter. The party started at 5:30 in the evening. At 9:50 that evening, May Doble (Doble) arrived with five males and entered the Rec Center. Rumbawa was one of the five males. Neither Doble nor any of the five males had been invited to the party. Medrano asked Doble and the five males to leave, but they refused. Shortly thereafter, Santiago, Randall Belmonte (Belmonte) and Jose Delizo (Delizo) helped escort the five males out of the Rec Center. J.R., one of the five males, yelled, "Pull out the gun already." Rumbawa pulled out a gun and pointed it at Medrano. Medrano grabbed her older daughter and returned to the Rec Center. From inside the Rec Center, Medrano heard "four to five" gunshots.

### A. Count 2: Reckless Endangering in the First Degree (Included Offense of Attempted Murder)—Kitagawa

Honolulu Police Officer Darren Kitagawa (Officer Kitagawa) testified that, at the time of the altercation, he was on special duty for Heaven's first birthday party, which was being held at the Rec Center the night of August 15, 1998. Officer Kitagawa was in full uniform, which included wearing his badge and gun. He received notice of a fight in the hall of the Rec Center shortly after 9:45 that evening. When he went out to the parking lot, he witnessed a male [Rumbawa] about fifteen feet away holding a gun. Officer Kitagawa yelled, "Police, stop. Drop the gun." The male [Rumbawa] then got into the back seat of a Toyota as it was reversing from a parked position. Officer Kitagawa again yelled an order to the car to stop; however, the car sped away toward the exit gate of the parking lot and then stopped. The car started moving again; Officer Kitagawa ran to keep up with the car, but it started to pull ahead of him. The car then slowed down, and Officer Kitagawa saw "a shadow come up in the rear passenger seat of the car over the roof." He saw a gun pointed directly at him from a distance of about twenty feet. Officer Kitagawa then saw a "couple flashes" from the gun pointed at him and heard four gunshots. He was

standing out in the open when the first shot was fired, then jumped behind a parked van. Officer Kitagawa then heard "several" more shots and returned fire. He testified all the shots were fired at him or in his direction.

Danny J. Ah Quin, Jr. (Ah Quin), a guest at the party, testified he saw a person in the back seat of the Toyota fire a gun at the police officer and saw dirt "kick up" about three or four feet from the officer after Ah Quin heard the first shot.

Brian Locquiao (Locquiao) testified that he was a passenger in the car in which Rumbawa rode away. Locquiao saw "how [Rumbawa] wen' shoot the gun." Locquiao was riding in the front seat of the car with his head covered when the first two shots were fired. Locquiao then turned around in his seat and looked at Rumbawa, and "when I wen' face him, he wen' shoot. He was still shooting[.]" Locquiao saw Rumbawa fire two more shots by sticking his hand out the open window of the car. Locquiao heard Rumbawa fire two shots, the police officer fire two shots, and Rumbawa fire another two shots, all at the same time.

### B. Count 3: Terroristic Threatening in the First Degree—Delizo

Delizo testified that after he and Belmonte helped Santiago and Medrano escort a male [J.R.] out the exit of the Rec Center and then were shoved by J.R., and after Delizo, Belmonte, and J.R. fell to the ground, he heard someone say, "Bring out the gun." When Delizo looked up he saw "somebody pull out one gun and just crank 'em. . . . He just wen' pull 'em back and wave 'em back and forth like that." Santiago testified that he saw Rumbawa wave the gun around and then specifically point it at Delizo.

### C. Count 4: Terroristic Threatening in the First Degree—Belmonte

Belmonte testified that after he and Delizo escorted a male [J.R.] out the exit of the Rec Center, Delizo and J.R. fell to the ground. Rumbawa, already outside, reached into his pants, pulled out a gun, cocked it, and pointed it at Belmonte's face from a distance of no more than ten feet, saying, "You F"ing punk." Santiago testified that he saw Rumbawa wave the gun around and then specifically point it at Belmonte.

### D. Count 5: Terroristic Threatening in the First Degree—Santiago

Santiago testified that he told the five uninvited males to leave. After they refused, Santiago, Belmonte and Delizo escorted the five males out of the Rec Center. As they were exiting the Rec Center, J.R. and Delizo fell to the ground. After J.R. and Delizo got up, J.R. said to Rumbawa, " 'F' this, pull out the gun already." Santiago then saw Rumbawa pull a gun from his pants and pull back on the slide, ejecting a round. Santiago said Rumbawa waved the gun around and focused the gun directly on each of them (Santiago, Belmonte, and Delizo). Santiago further testified that Rumbawa pointed the gun at Santiago's chest. Medrano also testified that Rumbawa pointed the gun at Santiago.

### E. Count 6: Terroristic Threatening in the First Degree—Ah Quin

Ah Quin testified that he went to the back door of the Rec Center after he heard a "commotion." Once outside the door, Ah Quin heard a male say, "Bust out the gun, bust out the gun." Ah Quin saw Rumbawa "click back the gun" causing a shell to fall out. Rumbawa then pointed the gun at everyone, saying, "Oh, what, guys like this? You like this? You like that?" Ah Quin ran around a white van to confront Rumbawa. Rumbawa then pointed the gun directly at Ah Quin a second time from a distance of six feet asking, "You still want some of this? You want some of this?" Ah Quin chased after Rumbawa, who ran and got into the backseat of a Toyota. Rumbawa pointed the gun at Ah Quin a third time from the backseat of the car and asked, "Oh, you still want some of this? You still want some of this?" As the car Rumbawa had gotten into was driving away, Ah Quin saw somebody fire a gun in the direction of Officer Kitagawa, who was running after the car as it sped away.

## II. STANDARDS OF REVIEW

### A. Included Offenses

■ Whether HRS § 707-713, Reckless Endangering in the First Degree, is an in-

cluded offense of Attempted Murder in the Second Degree under HRS § 701–109(4)(c) (1993) is a question of law reviewed de novo by this Court under the right/wrong standard. *State v. Friedman*, 93 Hawai'i 63, 68, 996 P.2d 268, 273 (2000) (whether Assault in the Third Degree committed in mutual affray is an included offense of family abuse presents a question of law, reviewed under the right/wrong standard).

## B. Insufficient Evidence

■ Whether the trial court properly convicted Rumbawa of four counts of Terroristic Threatening in the First Degree instead of only one count is a matter of sufficiency of evidence as to each count and is thus reviewed under the "substantial evidence test" as to each count. Regarding appellate review for insufficient evidence, the Hawai'i Supreme Court has repeatedly stated:

> · [E]vidence adduced in the trial court must be considered in the strongest light for the prosecution when the appellate court passes on the legal sufficiency of such evidence to support a conviction; the same standard applies whether the case was before a judge or jury. The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact.

*State v. Richie*, 88 Hawai'i 19, 33, 960 P.2d 1227, 1241 (1998) (internal quotation marks omitted).

## III. DISCUSSION

### A. Reckless Endangering in the First Degree Is an Included Offense of Attempted Murder in the Second Degree.

### 1. Count 2: Attempted Murder in the Second Degree.

Rumbawa was charged with Attempted Murder in the Second Degree, as follows:

> COUNT 2: On or about the 15th day of August, 1998, in the City and County of Honolulu, State of Hawaii [Hawai'i], JASON RUMBAWA did intentionally engage in conduct which is a substantial step in a course of conduct intended or known to

cause the death of Darren Kitagawa, thereby committing the offense of Attempted Murder in the Second Degree, in violation of Sections 705–500, 707–701.5 and 706–656 of the Hawaii [Hawai'i] Revised Statutes and where he had a semiautomatic firearm in his possession or threatened its use or used the semiautomatic firearm while engaged in the commission of this felony whether the semiautomatic firearm was loaded or not, and whether operable or not, he is subject to Sentence of Imprisonment for Use of a Firearm, Semiautomatic Firearm or Automatic Firearm in a Felony, in accordance with Section 706–660.1 of the Hawaii [Hawai'i] Revised Statutes.

A person commits Attempted Murder in the Second Degree if the person "[i]ntentionally engages in conduct which, under the circumstances as the person believes them to be, constitutes a substantial step in a course of conduct intended to culminate in the person's commission of the crime" of "intentionally or knowingly [causing] the death of another person." HRS § 705–500(1)(b) (1993) (Criminal Attempt); HRS § 707–701.5 (1993) (Murder in the Second Degree). Although Rumbawa was charged with Attempted Murder in the Second Degree in Count 2, he was convicted of the included offense of Reckless Endangering in the First Degree.

### 2. Reckless Endangering in the First Degree.

■ Hawai'i Revised Statutes § 707–713(1) (1993) states:

> § 707–713 Reckless endangering in the first degree. (1) A person commits the offense of reckless endangering in the first degree if the person employs widely dangerous means in a manner which recklessly places another person in danger of death or serious bodily injury or intentionally fires a firearm in a manner which recklessly places another person in danger of death or serious bodily injury.

Rumbawa contends that Reckless Endangering in the First Degree is not an included offense of attempted murder. Rumbawa cites *State v. Feliciano*, 62 Haw. 637, 618

P.2d 306 (1980), as authority. In *Feliciano*, the defendant shot at the victim and missed. The defendant was charged with attempted murder, but convicted of Reckless Endangering in the Second Degree. The Hawai'i Supreme Court affirmed the conviction, stating:

Attempted murder is established when a defendant intentionally or knowingly attempted to cause the death of another through an act which is a substantial step in the course of conduct intended to culminate in the crime of murder. HRS § 707–701 and § 705–500. Reckless endangering in the second degree is proved by a defendant's conduct which recklessly places another person in danger of death or serious bodily injury. HRS § 707–714(1).

The difference between attempted murder and reckless endangering in the second degree is one of degree. Reckless endangering only requires a reckless state of mind which is less culpable than the intentional or knowing requirement necessary for attempted murder.

The end result of reckless endangering and attempted murder is the same. In both instances the victim does not die but is placed in jeopardy of being injured or is being injured by appellant's conduct. Thus having the same end result and with a lesser degree of culpability in reckless endangering as compared to attempted murder, reckless endangering in the second degree is a lesser included offense of attempted murder under HRS § 701–109(4)(a). Proof of the attempted murder charge would establish every element of reckless endangering in the second degree.

Moreover, the legislative scheme places reckless endangering in the same classification as murder and attempted murder, offenses against persons. The same interest is being protected by both these statutes.

We hold that the trial court was correct in instructing the jury that reckless endangering in the second degree is a lesser included offense of attempted murder under HRS § 701–109(4)(a).

*Id.* at 639–40, 618 P.2d at 308 (citations and footnote omitted).

Rumbawa argues *Feliciano* stands for the proposition that Reckless Endangering in the Second Degree is an included offense of attempted murder, but Reckless Endangering in the First Degree is not. Rumbawa's argument ignores the 1978 and 1988 amendments to HRS § 707–713, Reckless Endangering in the First Degree. *Feliciano* was decided on the statute as it existed in 1976, the year Feliciano fired at his victim.

In 1976, HRS § 707–713 read as follows:

§ 707–713 **Reckless endangering in the first degree.** (1) A person commits the offense of reckless endangering in the first degree if he employs widely dangerous means in a manner which recklessly places another person in danger of death or serious bodily injury.

(2) Reckless endangering in the first degree is a class C felony.

In 1978, the legislature amended HRS § 707–713 as follows to include intentionally firing a firearm:

Sec. 707–713 **Reckless endangering in the first degree.** (1) A person commits the offense of reckless endangering in the first degree if he employs widely dangerous means in a manner which recklessly places another person in danger of death or serious bodily injury or intentionally fires a firearm in a manner which places another person in danger of death or serious bodily injury.

(2) Reckless endangering in the first degree is a Class C felony.

1978 Haw. Sess. L. Act 215, § 1 at 429.

In passing this amendment, the House Judiciary Committee stated:

The purpose of this bill is to amend the Penal Code by including in the crime of reckless endangering in the first degree, the intentional firing of a firearm in a manner which recklessly places another person in danger of death or serious bodily injury. This inclusion is felt to be appropriate because in many situations involving the intentional firing of a firearm, the elements necessary to constitute attempted murder are lacking and have been classified as reckless endangering in the second degree, which is a misdemeanor. Because

firearms are involved, your Committee believes that classification as a felony is appropriate.

Hse. Stand. Comm. Rep. No. 116, in 1977 House Journal, at 1335–36.

The Senate Judiciary Committee, in supporting this amendment, stated:

Your Committee finds that in many situations involving the intentional firing of firearms, the elements necessary to constitute attempted murder, a class A felony, was [sic] lacking. As a result the courts have classified that crime as recklessly endangering in the second degree which is a misdemeanor. Because of the grave dangers posed by the use of a firearm, your Committee feels that this reclassification to a class C felony is appropriate.

Senate Stand. Comm. Rep. No. 675–78, in 1978 Senate Journal, at 1063.

In 1988, HRS § 707–713(1) was amended by inserting the word "recklessly" as follows:

(1) A person commits the offense of reckless endangering in the first degree if he employs widely dangerous means in a manner which recklessly places another person in danger of death or serious bodily injury or intentionally fires a firearm in a manner which *recklessly* places another person in danger of death or serious bodily injury.

1988 Haw. Sess. L. Act 285, § 1, at 529 (emphasis in original).

In making this amendment, the Senate Judiciary Committee stated:

The statute relating to reckless endangering in the first degree is a felony offense which penalizes the person who "employs widely dangerous means in a manner which recklessly places another person in danger of death or serious bodily injury." In 1978, the Legislature added to this statute the phrase "or intentionally fires a firearm in a manner which places another person in danger of death or serious bodily injury." The Legislature felt that the grave dangers posed by the use of a firearm justified a felony sanction, which, previous to the amendment, would only have been a misdemeanor. The intent of the amendment was to penalize the person

who intentionally fires a firearm in a manner which recklessly places another person in danger of death or serious bodily injury. However, the 1978 amendment had inadvertently left out the word "recklessly." This bill corrects the deletion by inserting the word.

Senate Stand. Comm. Rep. No. 2141, in 1988 Senate Journal, at 922.

■ The legislative history of the 1978 and 1988 amendments to HRS § 707–713 shows the legislature intended Reckless Endangering in the First Degree to be an included offense of attempted murder when a person "intentionally fires a firearm in a manner which recklessly places another person in danger of death or serious bodily injury." HRS § 707–713. When Rumbawa fired a gun at or near Officer Kitagawa, he violated HRS § 707–713 by intentionally firing a firearm in a manner that recklessly placed Officer Kitagawa in danger of death or serious bodily injury.

Rumbawa's attorney admitted in his opening statement that Rumbawa was guilty of reckless endangering as to Count 2 "for firing at or near whoever he fired at or near, the police officer, the crowd that was around, and we think that's what the court ought to convict him of." However, Rumbawa's attorney did not specify the degree of reckless endangering that should apply.

Rumbawa contends the trial court erred in convicting him of Reckless Endangering in the First Degree under Count 2 because reckless endangering requires proof of an additional fact (either "widely dangerous means" or the use of a firearm) to the facts required to prove Attempted Murder in the Second Degree. The relevant tests for determining what constitutes an included offense are set forth in HRS § 701–109(4)(a) and (c) (1993), which provides:

**§ 701–109 Method of prosecution when conduct establishes an element of more than one offense.**

. . . .

(4) A defendant may be convicted of an offense included in an offense charged in the indictment or the information. An offense is so included when:

(a) It is established by proof of the same or less than all the facts required to establish the commission of the offense charged; or

. . . .

(c) It differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest or a different state of mind indicating lesser degree of culpability suffices to establish its commission.

### a. The test under HRS § 701–109(4)(a).

Under HRS § 701–109(4)(a), "the general rule is that an offense is included if it is impossible to commit the greater without also committing the lesser." *Friedman*, 93 Hawai'i at 72, 996 P.2d at 277 (internal quotation marks omitted). However, the court should not look merely at the elements of the two offenses "separately and then [lay] them side by side." *State v. Kupau*, 63 Haw. 1, 4–5, 620 P.2d 250, 252 (1980) (internal quotation marks omitted). There are several factors at which we look in evaluating whether an offense is included pursuant to HRS § 701–109(4)(a). The degree of culpability, the legislative statutory scheme, and the end result are all considerations under HRS § 701–109(4)(a). *Friedman*, 93 Hawai'i at 72, 996 P.2d at 277.

The Hawai'i Supreme Court has stated that the degree of culpability (recklessness) for Reckless Endangering in the First Degree is less than the intentional or knowing state of mind required for attempted murder. *Feliciano*, 62 Haw. at 639, 618 P.2d at 308. Both Reckless Endangering in the First Degree and attempted murder are, under the same statutory scheme, offenses against the person. Additionally, "[t]he same interest is being protected by both these statutes." *Id.* at 640, 618 P.2d at 308. Finally, "[t]he end result of reckless endangering and attempted murder is the same. In both instances the victim does not die but is placed in jeopardy

of being injured or is being injured by appellant's conduct." *Id.* at 639, 618 P.2d at 308.

Since *Feliciano*, however, the Hawai'i Supreme Court has stated that "[r]egarding the degree of culpability, the rule is that the lesser included offense cannot have a *mental state* greater than or *different from* that which is required for the charged offense." *Friedman*, 93 Hawai'i at 72, 996 P.2d at 277 (emphasis added) (quoting *State v. Alston*, 75 Haw. 517, 534, 865 P.2d 157, 166 (1994)).

The mental state for Reckless Endangering in the First Degree is different from the mental state for Attempted Murder in the Second Degree. The mental state for Reckless Endangering in the First Degree is intentionally firing a firearm "in a manner which recklessly places another person in danger of death or serious bodily injury." HRS § 707–713. The mental state for Attempted Murder in the Second Degree is to intentionally engage in conduct which is a substantial step toward intentionally or knowingly causing the death of another. HRS §§ 705–500 and 707–701.5. There is no mental state under Reckless Endangering in the First Degree to intentionally or knowingly cause the death of another. Because the mental states of Reckless Endangering in the First Degree and Attempted Murder in the Second Degree are different, Reckless Endangering in the First Degree does not appear to be an included offense of Attempted Murder in the Second Degree under a strict reading of HRS § 701–109(4)(a). *Friedman*, 93 Hawai'i at 72, 996 P.2d at 277.

Additionally, it is possible to commit Attempted Murder in the Second Degree without committing Reckless Endangering in the First Degree if no "widely dangerous means" [1] or "firearm" is used in the attempted murder. Therefore, Reckless Endangering in the First Degree would not appear to be included under Attempted Murder in the Second Degree under HRS § 701–109(4)(a) because it is *not* "impossible to commit the greater without also committing the lesser."

---

1. HRS § 708–800 (1993) defines "widely dangerous means" as follows:

"Widely dangerous means" includes explosion, fire, flood, avalanche, collapse of building, poi-

son gas, radioactive material, or any other material, substance, force, or means capable of causing potential widespread injury or damage.

*Friedman,* 93 Hawai'i at 72, 996 P.2d at 277 (internal quotation marks omitted).

■ Although it is possible to commit Attempted Murder in the Second Degree without also committing Reckless Endangering in the First Degree, the 1978 and 1988 amendments to HRS § 707–713 were intended to make Reckless Endangering in the First Degree an included offense of attempted murder when a firearm is intentionally fired. The intentional firing of a firearm is a way of taking a "substantial step" in the commission of a murder. Although this element is not expressly included in the statutes defining attempted murder, an "overliteral reading of the words" of HRS § 701–109 (1993) "would accomplish an absurd result, obviously unintended by the legislature ." *State v. Smythe,* 72 Haw. 217, 220, 811 P.2d 1100, 1102 (1991).

The Hawai'i Supreme Court held in *Smythe* that "negligent homicide is a lesser included offense of manslaughter" under HRS § 701–109(4)(a) and (c). 72 Haw. at 220, 811 P.2d at 1102. In *Smythe,* the defendant drove his van into the back of a car, killing two occupants, and was indicted for Manslaughter and Negligent Homicide in the First Degree. Although negligent homicide requires proof of use of a vehicle in causing the homicide (an element not necessary for a Manslaughter charge), the court held that negligent homicide was nevertheless an included offense of Manslaughter. The court pointed to the legislative history of the negligent homicide statute and cited the committee report to demonstrate that the legislature intended negligent homicide to be an included offense of Manslaughter.

As in *Smythe,* this court must look at what the legislature intended. The legislature clearly intended, and this court concludes, that Reckless Endangering in the First Degree is an included offense of Attempted Murder in the Second Degree under HRS § 701–109(4)(a).

**b. The test under HRS § 701–109(4)(c).**

Hawai'i Revised Statutes § 701–109(4)(c) expands the doctrine of included offenses beyond section(4)(a). *State v. Kupau,* 63 Haw. at 7, 620 P.2d at 254. In addition to degree of culpability and end result (the two factors involved in analyzing § 701–109(4)(a)), subsection (c) includes "as lesser included offenses crimes that require a ... less serious injury or risk of injury." *Kupau,* 63 Haw. at 7, 620 at 254 (citing HRS § 701–109(4)(c); Model Penal Code, § 1.08(4), Comment at p. 41–42 (Tentative Draft No. 5, 1956)); *see also Friedman,* 93 Hawai'i at 73, 996 P.2d at 278. In *Friedman,* the Hawai'i Supreme Court has expressly stated that "[s]ubsection (c) differs from (a) in that there may be some dissimilarity in the facts necessary to prove the lesser offense, but the end result is the same." *Id.* (internal quotation marks omitted).

Although there are some dissimilarities in the facts necessary to prove Reckless Endangering in the First Degree and Attempted Murder in the Second Degree (the former requiring the firing of a firearm), Reckless Endangering in the First Degree must be considered an included offense of Attempted Murder in the Second Degree under the logic of *Smythe.*[2]

The Hawai'i Supreme Court in *Smythe* concluded that negligent homicide was an included offense of Manslaughter under HRS § 701–109(4)(c), although negligent homicide required proof of a vehicle and Manslaughter did not. *Smythe* concluded that an overliteral reading of the words of HRS § 701–109(4)(a) and (c) "would accomplish an absurd result, obviously unintended by the legislature." 72 Haw. at 220, 811 P.2d at 1102. As the court in *Smythe* concluded that negli-

---

2. In *State v. Tagaro,* 7 Haw.App. 291, 757 P.2d 1175 (1987), we noted that, "[a]t trial on the charge of attempted murder ... [t]he jury was instructed that if it did not find Defendant guilty of the attempted murder charge it could consider the *included* offenses of Assault in the First and Second Degree, and *Reckless Endangering in the First* and Second Degree." *Id.* at 292, 757 P.2d at 1176 (emphasis added). In *State v. Holbron,* 80 Hawai'i 27, 904 P.2d 912 (1995), the defendant was convicted of Attempted Murder in the Second Degree, and the circuit court granted jury instructions regarding "the *included* offenses of assault in the first degree, assault in the second degree, *and reckless endangering in the first degree.*" *Id.* at 31, 904 P.2d at 916 (emphasis added and footnotes omitted).

gent homicide is an included offense of Manslaughter under HRS § 701–109(4)(a) and (c) because of clear legislative intent, so do we conclude that Reckless Endangering in the First Degree is an included offense of Attempted Murder in the Second Degree. This is the clear intent of the legislature.

### B. There Was Substantial Evidence Present to Support the Trial Court's Finding of Four Counts of Terroristic Threatening in the First Degree.

Rumbawa was charged and convicted of four counts of violating HRS § 707–716(1)(d), which reads as follows:

§ **707–716 Terroristic threatening in the first degree.** (1) A person commits the offense of terroristic threatening in the first degree if the person commits terroristic threatening:

. . . .

(d) With the use of a dangerous instrument.[3]

Terroristic threatening is defined by HRS § 707–715 (1993) as follows:

§ **707–715 Terroristic threatening, defined.** A person commits the offense of terroristic threatening if the person threatens, by word or conduct, to cause bodily injury to another person or serious damage to property of another or to commit a felony:

(1) With the intent to terrorize, or in reckless disregard of the risk of terrorizing, another person; or

(2) With intent to cause, or in reckless disregard of the risk of causing evacuation of a building, place of assembly, or facility of public transportation.

■ Rumbawa contends that there was insufficient evidence to prove beyond a reasonable doubt that he had the requisite intent to terroristically threaten Delizo, Belmonte, Santiago, and Ah Quin, individually. Rumbawa states that he "clearly had a single intent to hold at bay the people confronting

him and his friends at the back door of the Rec Center."

■ "The test to determine whether the defendant intended to commit more than one offense in the course of a criminal episode is whether the evidence discloses one general intent or discloses separate and distinct intents." *State v. Castro,* 69 Haw. 633, 653, 756 P.2d 1033, 1047 (1988) (internal quotation marks omitted).

With respect to Count 3, there was substantial evidence that Rumbawa focused his attention and specifically pointed the gun at Delizo after Delizo and J.R. fell to the ground at the exit of the Rec Center.

With respect to Count 4, there was substantial evidence that Rumbawa focused his attention and specifically pointed the gun at the face of Belmonte saying, "You, F"ing punk," after Belmonte, Delizo, and Santiago escorted the males out the exit of the Rec Center.

With respect to Count 5, there was substantial evidence that Rumbawa specifically pointed the gun at Santiago's chest area after ejecting a round. Pointing the gun at Santiago, Rumbawa asked, "What's up? What's up?" after Santiago, Belmonte, and Delizo escorted the males out the exit of the Rec Center.

With respect to Count 6, there was substantial evidence that Rumbawa specifically pointed the gun at Ah Quin on three independent occasions: when Ah Quin was standing with others in front of Rumbawa outside the Rec Center exit, after Ah Quin confronted Rumbawa by the white van, and from the back seat of the Toyota as the car drove away when Rumbawa pointed the gun at Ah Quin asking, "Oh, you still want some of this? You still want some of this?"

The Hawai'i Supreme Court has stated that "[t]he mind of an alleged offender may be read from his acts, conduct, and inferences fairly drawn from all the circumstances." *State v. Eastman,* 81 Hawai'i 131, 141, 913 P.2d 57, 67 (1996). We conclude

---

3. HRS § 707–700 (1993) defines "dangerous in-    strument" to include "any firearm."

there was substantial evidence on the record upon which the circuit court found Rumbawa harbored the separate and distinct intents to threaten Delizo, Belmonte, Santiago, and Ah Quin with a dangerous weapon, specifically a firearm.

## IV.   CONCLUSION

The circuit court's June 15, 1999, judgment is affirmed.