**Electronically Filed
Intermediate Court of Appeals
CAAP-18-0000741
30-MAR-2021
07:52 AM
Dkt. 174 SO**

NO. CAAP-18-0000741

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


STATE OF HAWAI'I, Plaintiff-Appellee, v.
MARK BECKER, Defendant-Appellant


APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(CASE NO. 2CPC-17-0000286)


SUMMARY DISPOSITION ORDER
(By: Ginoza, Chief Judge, Leonard and Nakasone, JJ.)


Defendant-Appellant Mark Vincent Becker (**Becker**) appeals from the Judgment Conviction and Sentence, Notice of Entry (**Judgment**) entered on August 1, 2018, in the Circuit Court of the Second Circuit (**Circuit Court**).[1]

On April 25, 2017, Becker was charged by complaint with one count of Attempted Murder in the Second Degree (**Attempted Murder**) in violation of Hawaii Revised Statutes (**HRS**)

---

[1]     The Honorable Rhonda I.L. Loo presided.

§§ 705-500(2) (2014)[2] and 707-701.5 (2014).[3] Following a jury trial, Becker was convicted of the lesser-included offense of Attempted Assault in the First Degree (**Attempted Assault First**) in violation of HRS §§ 705-500(2) and 707-710 (2014),[4] and he was sentenced to a term of ten years imprisonment.

Becker raises six points of error on appeal, contending that: (1) the Circuit Court deprived Becker of his constitutional right to self-representation; (2) the Circuit Court improperly gave the jury an instruction on Attempted Assault First as an included offense; (3) the Circuit Court erred by failing to provide a written instruction on the included

---

[2] The statute provides, in relevant part:

**§ 705-500 Criminal attempt.** . . .

(2) When causing a particular result is an element of the crime, a person is guilty of an attempt to commit the crime if, acting with the state of mind required to establish liability with respect to the attendant circumstances specified in the definition of the crime, the person intentionally engages in conduct which is a substantial step in a course of conduct intended or known to cause such a result.

[3] At the time Becker was charged, HRS § 707-701.5 provided:

**§ 707-701.5 Murder in the second degree.** (1) Except as provided in section 707-701, a person commits the offense of murder in the second degree if the person intentionally or knowingly causes the death of another person.
(2) Murder in the second degree is a felony for which the defendant shall be sentenced to imprisonment as provided in section 706-656.

[4] HRS § 707-710 provides:

**§ 707-710 Assault in the first degree.** (1) A person commits the offense of assault in the first degree if the person intentionally or knowingly causes serious bodily injury to another person.

2

offense of Assault in the Third Degree (**Assault Third**);[5] (4) the Circuit Court erred by failing to instruct the jury on the included offense of Reckless Endangering in the Second Degree (**Reckless Endangering Second**);[6] (5) Becker was deprived of his right to effective assistance of counsel at trial; and (6) there was insufficient evidence to convict Becker of Attempted Assault First.

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Becker's points of error as follows:

(1) Becker contends that the Circuit Court denied him his right to self-representation, citing Faretta v. California, 422 U.S. 806, 834 (1975) (holding that a defendant must be free

---

[5]     HRS § 707-712 (2014) provides:

> **§ 707-712  Assault in the third degree.**  (1) A person commits the offense of assault in the third degree if the person:
> (a)     Intentionally, knowingly, or recklessly causes bodily injury to another person; or
> (b)     Negligently causes bodily injury to another person with a dangerous instrument.
> (2)     Assault in the third degree is a misdemeanor unless committed in a fight or scuffle entered into by mutual consent, in which case it is a petty misdemeanor.

[6]     HRS § 707-714 (2014) provides, in relevant parts:

> **§ 707-714  Reckless endangering in the second degree.**
> (1) A person commits the offense of reckless endangering in the second degree if the person:
> (a)     Engages in conduct that recklessly places another person in danger of death or serious bodily injury; or
> . . . .
> (2)     Reckless endangering in the second degree is a misdemeanor.

3

to decide to conduct his own defense), as well as various cases requiring a voluntary, knowing, and intelligent waiver of the right to counsel. He submits that, on March 5, 2018, he "specifically asked the court if he could proceed to trial without an attorney." That is not, however, a completely accurate characterization of the record.

At the March 5, 2018 hearing, defense counsel Richard Gronna (**Gronna**) orally moved to withdraw as counsel, at Becker's request. After the Circuit Court granted Gronna's motion, the court said it would take off the motions *in limine* that were set to be argued that day, as well as the trial that was scheduled to start the next day, and the court would set up a hearing for the next week and would try to find another attorney for Becker at that time. Becker then asked the court questions on various issues, ending with:

> [Becker]: Well, can I ask a question? Like is the trial going to be -- could I just defend myself and have a nonjury trial? Do I have to have a jury? Can I refuse a jury trial?
>
> THE COURT: You want to -- okay. So you want to waive your --
>
> [Becker]: How does that work?
>
> THE COURT: -- right to an attorney and you want to waive your right to a jury?
>
> [Becker]: Yeah.
>
> THE COURT: You want both?
>
> [Becker]: The jury is not a good thing for me here in Hawaii.
>
> THE COURT: So you're asking to waive your right to a jury and you're -- so you want an attorney but you don't want a jury trial? Is that what you're saying?

[Becker]:  I think that a jury trial in my -- being the person that I am and here in Hawaii, it's not a jury of my peers.  It's people who don't like me from --

THE COURT:  Okay.

[Becker]:  -- all (inaudible).

THE COURT:  But you want --

[Becker]:  So --

THE COURT:  -- an attorney, right?

[Becker]:  -- I think -- you know, I'd trust myself with you as a person.

THE COURT:  But you want an -- you want an attorney to represent you, correct?

[Becker]:  Can I just have an attorney to help me --

THE COURT:  Well --

[Becker]:  -- and start the trial?  Can we go to trial immediately?  If I don't (inaudible) the jury --

THE COURT:  Okay. . . . There's two things you're asking me.

[Becker]:  Right.

THE COURT:  One, you're saying you want an attorney.

[Becker]:  Right.

THE COURT:  And secondly, you're saying you want -- you don't want a jury to hear your case.  Is that what -- is that what I'm hearing from you?

[Becker]:  I believe so, yeah.

THE COURT:  Okay.  Okay.

. . . .

THE COURT:  So first -- first things first.

[Becker]:  Okay.

THE COURT:  If you don't -- if you want an attorney, I have to continue that so we can find you an attorney.  That's the first thing.  Okay?  And that's going to take some time because we've gone through a few -- quite a few attorneys.  Now it's time to look for someone else.  Okay?  So that's part of it.  That's why we're continuing it to next week Wednesday.
Secondly, yes, there's an option for you to waive jury trial and just have a trial before myself, just a judge.  Yes, that is an option.  But I suggest that you -- maybe you should talk it over with your new attorney first, and if

5

that's the way you folks want to go, if that's the way you want to go, that is a very real possibility to do a jury-waived trial, meaning there will be no jury to hear your case. It will just be the attorneys, myself, and you and the witnesses.

[Becker]: And what if I don't even want an attorney at all?

THE COURT: Then I will -- if you don't want an attorney -- I want you to think about this because it's a very serious charge. It's currently an attempted murder in the second degree, so you're looking at life with a possibility of parole. Correct? So it's a very serious offense. **So why don't you think about it, and when we come back next week, we'll have an attorney for you. If you tell me next week that you want to represent yourself, I'm going to ask you a lot of questions just to make sure that it's truly what you want to do.** But you should think about that very hard because if you get convicted of attempted murder in the second degree, you're looking at life imprisonment without -- with the possibility of parole.

[Becker engages in various unrelated inquiries, with responses by the Court and attorneys. Then:]

[Becker]: Can I ask another question? What about the fact of the six-month speedy trial thing? Can I just have someone show me the waivers that I've signed and the way it checks out on the calendar.

THE COURT: You know, you can raise all these issues, Mr. Becker, but can you raise them with your new attorney, first of all? **Or if you don't want an attorney, we'll go through the colloquy next week and you can possibly represent yourself. It's up to you.** But it's probably easier and it would make more sense to have an attorney, because, again, you need to understand you're looking at attempted murder in the second degree, which carries it -- with it a life possibility -- with the possibility of parole sentence. So it's a very, very –

[Becker]: Most of those --

THE COURT: -- serious charge.

[Becker]: Yeah. Right. And the --

THE COURT: Okay. So we'll see you next week Wednesday. Okay?
Thank you.

[No further response from Becker. Court was adjourned.]

(Emphasis added).

Accordingly, Becker did not unequivocally say that he wanted to represent himself. His inquiry to the Circuit Court was more in the nature of: what if I want to represent myself? Under no circumstances would Becker's inquiries be considered a valid waiver of his right to an attorney. The Circuit Court's response was to try to clarify what Becker was asking, and then to suggest that Becker think it over and talk to new counsel about it. The court twice informed Becker that when they came back the next week, after Becker had an opportunity to speak with new counsel, if Becker did not want to be represented by counsel, the court would then colloquy him to make sure that was truly what he wanted to do. Throughout the exchange, the court made it clear that it was Becker's decision whether to be represented by counsel or be self-represented.

At the March 14, 2018 hearing, newly-appointed trial counsel Gerald Johnson (**Johnson**) appeared and said he would need six weeks to prepare for trial. Becker indicated that he wanted to "go to trial as fast as possible." However, he also indicated that he wanted to meet with Johnson and "talk about everything." Becker was clearly unhappy with any further delay and wanted a "speedy trial." At one point, Becker said he did not need any help, but then again agreed to consult with counsel.

> [Becker]: If it's going to go this route, another six -- two months sitting in jail, I do not need this help, just so you know. I want to see the Rule 44 waivers and I want them written down on paper, the dates I signed them, when the went to --

> THE COURT: You talk with Mr. Johnson when you get a chance.
>
> [Becker]: Fine.

Becker then refused to waive his speedy trial rights, but never asserted that he wanted to waive his right to counsel and proceed pro se. The Circuit Court never denied a request for Becker to proceed without counsel. At no point in subsequent proceedings did Becker state that he wanted to exercise his right to represent himself at trial.

Becker points to no case law supporting his argument that his constitutional right to self-representation was violated under these circumstances, and we find none. Therefore, based on the record in this case, we conclude that Becker's point of error is without merit.

(2) Becker argues there was no rational basis to support the jury instruction on Attempted Assault First as an included offense of Attempted Murder, citing HRS § 701-109(5) (Supp. 2019). The statute provides, in relevant part:

> **§ 701-109 Method of prosecution when conduct establishes an element of more than one offense**. . . .
> . . . .
> (4) A defendant may be convicted of an offense included in an offense charged in the felony complaint, indictment, or information. An offense is so included when:
> (a) It is established by proof of the same or less than all the facts required to establish the commission of the offense charged; or
> (b) It consists of an attempt to commit the offense charged or to commit an offense otherwise included therein; or
> (c) It differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest or a different state of mind indicating lesser degree of culpability suffices to establish its commission.

8

(5)   The court is not obligated to charge the jury with respect to an included offense unless there is a rational basis in the evidence for a verdict acquitting the defendant of the offense charged and convicting the defendant of the included offense.

"[J]ury instructions on lesser-included offenses must be given where there is a rational basis in the evidence for a verdict acquitting the defendant of the offense charged and convicting the defendant of the included offense."  State v. Austin, 143 Hawaiʻi 18, 38, 422 P.3d 18, 38 (2018) (citing State v. Flores, 131 Hawaiʻi 43, 51, 314 P.3d 120, 128 (2013)).

Here, the instructions to the jury included:

Instruction No. 17
In the Complaint, the Defendant, MARK BECKER, is charged with the offense of Attempted Murder in the Second Degree.
A person commits the offense of Attempted Murder in the Second Degree if he intentionally engages in conduct which, under the circumstances as he believes them to be, is a substantial step in a course of conduct intended or known to cause the death of another person.
There are two material elements of the offense of Attempted Murder in the Second Degree, each of which the prosecution must prove beyond a reasonable doubt.
These two elements are:
1.   That on or about April 2, 2017, in the County of Maui, State of Hawaii, the Defendant, MARK BECKER, intentionally engaged in conduct; and
2.   That the conduct, under the circumstances as Defendant believed them to be, was a substantial step in a course of conduct intended or known to be practically certain by the Defendant to cause the death of Carlos Loria.
Conduct shall not be considered a substantial step unless it is strongly corroborative of the Defendant's intent to commit Murder in the Second Degree, which is, intentionally or knowingly causing the death of another person.
. . .

Instruction No. 19
If and only if you find the Defendant not guilty of Attempted Murder in the Second Degree, or you are unable to reach a unanimous verdict as to Attempted Murder in the Second Degree, then you must consider whether the Defendant is guilty or not guilty of the included offense of Attempted Assault in the First Degree.
A person commits the offense of Attempted Assault in the First Degree if he intentionally engages in conduct

> which, under the circumstances as he believes them to be, is a substantial step in a course of conduct intended or known to cause serious bodily injury to another person.
>      There are two material elements of the offense of Attempted Assault in the First Degree, each of which the prosecution must prove beyond a reasonable doubt.
>      These two elements are:
> 1. That on or about April 2, 2017, in the County of Maui, State of Hawaii, the Defendant intentionally engaged in conduct; and
> 2. That the conduct, under the circumstances as Defendant believed them to be, was a substantial step in a course of conduct intended or known to be practically certain by the Defendant to cause <u>serious bodily injury to Carlos Loria</u>.
>      Conduct shall not be considered a substantial step unless it is strongly corroborative of the Defendant's intent to commit Attempted Assault in the First Degree, which is intentionally causing serious bodily injury to another person.

(Emphasis added).

The difference between these two instructions was whether Becker's conduct could have been intended or known to be practically certain to cause "the death of Carlos Loria" versus "serious bodily injury to Carlos Loria" (**Loria**).

Becker argues that there was no rational basis for the jury to find there was an attempted assault because Becker never denied hitting Loria's bicycle with his van; rather, Becker argues that it was not intentional. Becker further argues in this case, there was "no attempt" because it was a completed act, *i.e.*, a completed act of Assault. However, based on the evidence, discussed below, there was a rational basis for the jury to find that Becker intended or knew that hitting Loria's bicycle with his van was practically certain to cause serious bodily injury to (but not the death of) Loria, but a jury could determine that Loria's injuries did not meet the definition of

serious bodily injury.  See HRS § 707-700 (2014) (defining serious bodily injury as "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ").

In his reply brief, Becker also points to the testimony of Dr. Gabrielle O'Sullivan (**Dr. O'Sullivan**) to argue that Loria's resultant injuries were not serious enough to create "a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ" as "serious bodily injury" is defined by statute.

Other evidence at trial -- including surveillance footage and witness testimony -- showed:  Becker's van striking Loria's bicycle causing Loria to launch through the air off of the bicycle; the bicycle being broken by being run over by the van after Loria was thrown from it; Loria's testimony of the van passing "right by my head" when it passed where Loria had landed; and testimony by Dr. O'Sullivan that Loria's injuries could have been life-threatening.

While the evidence arguably showed that Loria did not ultimately suffer a "serious bodily injury," under the facts here, with the van striking the bicycle that Loria was riding, the jury could rationally conclude that the act was intended by Becker and could have been practically certain to cause serious

11

bodily injury to Loria.  Thus, there was a rational basis here for the jury to acquit Becker of Attempted Murder and convict Becker of Attempted Assault First.  See Flores, 131 Hawaiʻi at 53, 314 P.3d at 130.  We conclude the Circuit Court did not err by including the Attempted Assault First instruction.

(3)  Becker argues that the Circuit Court plainly erred in not providing the jury with a *written* copy of Instruction No. 21, which was read to the jury, along with the other jury instructions.  Instruction No. 21 instructed the jury on the lesser included offense of Assault Third.[7]

The record on appeal contains a document entitled Jury Instructions Read to the Jury/Given to the Jury Nos. 1-32.  It appears that, prior to the court's oral reading of the instructions, defense counsel was provided a "clean copy" of the written instructions that were to be read to the jury.[8]  Prior to reading the instructions, the Circuit Court said, "Ladies and gentlemen, it is now my duty to instruct you on the law applicable to this case.  You have in front of you packets of the jury instructions.  So you're free to read along with me."  Thus, at this point, it appears that the court, all members of the

---

[7]  At trial, Becker made a blanket objection to instructing the jury on any lesser included offenses.  Instruction No. 21 was given to the jury over Becker's objection.

[8]  At the beginning of the proceeding, Defense counsel said to the court, "And, Your Honor, I apologize.  I didn't print out the clean copy of the new instructions."  The court responded, "So the clerk will give you a clean copy once we settle the instructions."  At no point did counsel indicate that he had not been given the clean copy as directed by the court.

jury, and prosecution and defense counsel had the written instructions in front of them, and everybody was invited to follow along as the court read them.

The transcript of the proceedings reflects that, after reading Instruction No. 20, the court read Instruction No. 21 to the jury, as follows:

> If and only if, one, you find the defendant not guilty of Attempted Murder in the Second Degree or you are unable to reach a unanimous verdict as to Attempted Murder in the Second Degree and, two, you find the defendant not guilty of offense of Attempted Assault in the First Degree or you are unable to reach a unanimous verdict as to Attempted Assault in the First Degree and, three, you find the defendant not guilty of Assault in the First Degree or you are unable to reach a unanimous verdict as to Assault in the Second Degree, then you must consider whether the defendant is guilty or not guilty of the included offense of Assault in the Third Degree.
> A person commits the offense of Assault in the Third Degree if he intentionally, knowingly or recklessly causes bodily injury to another person.
> There are two material elements of the offense of Assault in the Third Degree, each of which the prosecution must prove beyond a reasonable doubt.
> These two elements are:
> One, that on or about April 2nd, 2017, in the County of Maui, State of Hawaii, the defendant caused bodily injury to Carlos Loria; and two, that the defendant did so intentionally, knowingly or recklessly.

The Circuit Court then proceeded to read Instruction No. 22, and the rest of the instructions. When finished, the court asked counsel to approach the bench and, outside the hearing of the jury, the court asked, "Any objections to the reading?" Both attorneys responded, "No objection." Nor does the record reflect any one else in the courtroom -- such as court personnel or the jury members who were encouraged to read along with the judge -- noting a missing page in the written packet of jury instructions. Two jury communications were put on the

record, neither of which raised any question about Instruction No. 21.  Later that same day, the jury indicated that it reached a unanimous verdict finding Becker "Guilty of the included offense of Attempted Assault in the First Degree."

Nevertheless, the document that was filed in the Circuit Court record on May 16, 2018, nine days later, which is entitled the Jury Instructions Read to the Jury/Given to the Jury Nos. 1-32, is missing the page containing Jury Instruction No. 21.[9]  We note that the title of the document indicates that it includes the instructions **read** to the jury, which is plainly inconsistent with the transcript of the court's reading of the instructions, including Instruction No. 21.

An appellate court "will apply the plain error standard of review to correct errors [that] seriously affect the fairness, integrity, or public reputation of judicial proceedings, to serve the ends of justice, and to prevent the denial of fundamental rights."  State v. Kikuta, 125 Hawaiʻi 78, 95, 253 P.3d 639, 656 (2011) (citation and internal quotation marks omitted).

Notwithstanding that there appears to be a page missing in the document filed by the Circuit Court on May 16, 2018, nothing presented to this court or in the record on appeal clearly indicates that the packet of instructions provided to the jury was missing Instruction No. 21, as opposed to indicating that a clerical error occurred in conjunction with the filing of

---

[9]     There was one numbered instruction on each page.

14

that document.  Moreover, considering the instructions as a whole and all of the circumstances here, including but not limited to the judge's oral charge just hours before the jury's verdict, which indisputably contained Instruction No. 21, we conclude that Becker has not shown that there was a reasonable possibility that error with respect to the Jury Instruction addressing Assault Third contributed to his conviction.

(4)  Becker argues that the Circuit Court plainly erred in failing to *sua sponte* instruct the jury on the included offense of Reckless Endangering Second.

As set forth above, "jury instructions on lesser-included offenses must be given where there is a rational basis in the evidence for a verdict acquitting the defendant of the offense charged and convicting the defendant of the included offense."  <u>Flores</u>, 131 Hawaiʻi at 51, 314 P.3d at 128.  A person commits the misdemeanor offense of Reckless Endangering Second if he or she "[e]ngages in conduct that recklessly places another person in danger of death or serious bodily injury."  HRS § 707-714(1)(a).  Hawaiʻi courts have recognized Reckless Endangering Second to be a lesser-included offense of, *inter alia*, attempted murder.  <u>See</u> <u>State v. Rumbawa</u>, 94 Hawaiʻi 513, 516-21, 17 P.3d 862, 865-70 (App. 2001) (citing <u>State v. Feliciano</u>, 62 Haw. 637, 618 P.2d 306 (1980)).

Here, Becker testified, *inter alia*, that he was only trying to capture Loria, after a prior altercation with Loria

followed by Loria allegedly smashing Becker's windshield with a rock. Becker said, at one point, he was just trying to knock Loria off the bicycle. He also testified that his visibility was limited and the "accident" happened when he was focused on trying to avoid hitting a fire hydrant. Accordingly, Becker argues that, based on his testimony, a jury could have found that he acted recklessly and his recklessness placed Loria in danger of death or serious bodily injury.

Based on our review of all of the evidence, we conclude that there was a rational basis in the evidence for a verdict acquitting Becker of, *inter alia*, Attempted Murder, and instead convicting him of Reckless Endangering Second.

The State argues that any such error is harmless beyond a reasonable doubt under State v. Magbulos, 141 Hawaiʻi 483, 413 P.3d 387 (App. 2018), because the jury convicted Becker of the higher-included offense of Attempted Assault First, despite being instructed on, *inter alia*, Assault Third, which like Reckless Endangering Second is a misdemeanor-level offense. In Magbulos, this court discussed the supreme court's jurisprudence concerning whether failure to instruct on a lesser-included offense can be harmless error. Id. at 498-99, 413 P.3d at 402-03 (citations omitted).

Here, the jury was instructed on Attempted Murder, Attempted Assault First, Assault Second, and Assault Third, and was found guilty of Attempted Assault First, which is two levels

16

higher than Reckless Endangering Second. The jury was not left with an "all or nothing" choice between the guilty verdict it rendered and a complete acquittal. See id. As this court held in Magbulos, "absent unusual circumstances, the failure to instruct on a lesser included offense two levels below the offense for which the defendant is found guilty will ordinarily be harmless." Id. at 499, 413 P.3d at 403. Here, akin to Magbulos, it strains credulity to believe that the jury who found Becker guilty of Attempted Assault First, despite being instructed on the lesser-included offenses of Assault Second, and Assault Third, might reasonably have found him guilty of Reckless Endangering Second if they had been instructed on it. We therefore conclude that there is no reasonable possibility that the Circuit Court's failure to instruct on Reckless Endangering Second affected the outcome in this case.

(5) Becker argues that he was deprived of his right to effective assistance of counsel at trial on multiple grounds.

First, Becker argues that competent trial counsel would have objected to, and/or moved to redact, the "lengthy" portion of the audio recording of a voluntary statement in which Maui Police Department Detective Dennis Lee questioned Becker regarding Becker's attempts to obtain surveillance video from Ohana Drapery & Upholstery (**Ohana Drapery**), including whether Becker had offered to buy such footage from Ohana Drapery. Becker argues that this evidence was essentially prior bad act

17

evidence under Hawaiʻi Rules of Evidence Rule 404, and that it undermined his credibility because it could have appeared as though he was afraid that such video could contain incriminating evidence that he sought to hide or destroy.

However, Becker's theory of the case was consistent with his recorded statement that Loria was the aggressor that Becker only acted in response to; Johnson argued as much in his closing: "[a]nd one thing that is good is that you will have Mr. Becker's statement to the police." Likewise, Becker's attempt to obtain evidence from Ohana Drapery -- which was located at the site of the initial altercation with Loria -- was consistent with Becker's story that he was looking for evidence to support his account of fearing Loria as an aggressor. Becker testified that he was not offering to buy the evidence, but that he was trying to indicate his seriousness by "pull[ing] out a $100 bill in my pocket" as a means of showing that he wasn't "a homeless guy" wasting the business owner's time.

Thus, it appears that trial counsel's non-objection to the portion of the recorded police interview discussing an alleged attempt to obtain video evidence from Ohana Drapery had an obvious tactical basis and a valid strategic rationale. State v. Richie, 88 Hawaiʻi 19, 39-40, 960 P.2d 1227, 1247-48 (1998) ("matters presumably within the judgment of counsel, like *trial strategy*, will rarely be second-guessed by judicial hindsight." (citation and internal quotation marks omitted)). We conclude

that the lack of objection to this evidence did not fall below the range of competence demanded of attorneys in criminal cases. State v. Wakisaka, 102 Hawaiʻi 504, 513-14, 78 P.3d 317, 326-27 (2003).

Relatedly, Becker argues that trial counsel was ineffective when he withdrew Becker's Motion *in Limine* because that motion would have led to the redaction of the Ohana Drapery questions and answers. The State notes that Johnson's withdrawal of the motion was at Becker's specific request when Johnson wanted to proceed with it, which Becker replies shows that Johnson performed incompetently because he should not have acceded to Becker's request on withdrawing the motion. However, as previously discussed, withdrawal of the Motion *in Limine* was consistent with Becker's strategy of demonstrating that Becker was looking for evidence to bolster his claim that Loria was the aggressor and wrongdoer, and Becker was just trying to capture him, presumably to bring him to justice, when the van-bicycle incident occurred. Accordingly, we reject Becker's argument that he was denied effective assistance of counsel when Johnson withdrew the Motion *in Limine* previously filed by Gronna.

Becker also argues that trial counsel "proved ineffective in getting Loria to admit" to a second confrontation with Becker. Counsel tried to impeach Loria with a police report, but Loria claimed that the report was not a correct

summary of what he told the police. Becker contends that competent counsel would have then subpoenaed the police officer who took Loria's statement. However, as the State argues, whether there was one confrontation or two had little or no bearing on the charged conduct and Becker's state of mind. We cannot conclude that counsel's failure to further impeach Loria constituted ineffective assistance of counsel.

Finally, Becker argues that counsel's failure to request a jury instruction on Reckless Endangering Second and failure to object to the lack of a written jury instruction on Assault Third were further instances of ineffective assistance of counsel. However, as we have rejected Becker's argument that any such instructional error constituted reversible error, we conclude that any such error did not result in a withdrawal or substantial impairment of a potentially meritorious defense.

Accordingly, we conclude that Becker's contentions that he was provided ineffective assistance of trial counsel are without merit.

(6) Becker argues that there was not sufficient evidence to convict him of Attempted Assault First, pointing to his own testimony as credible and Loria's testimony as not credible, as well as his earlier argument that there was no evidence of an attempt offense because there was a completed act when Becker struck Loria's bicycle. Becker's argument is without

merit.  As discussed in conjunction with our disposition of Becker's argument that the Circuit Court erred in instructing the jury on Attempted Assault First, and viewing the evidence adduced at trial in the light most favorable to the prosecution, there was evidence of sufficient quality and probative value to enable the jury to find that Becker intentionally engaged in conduct that constituted a substantial step in a course of conduct that Becker intended or knew to be practically certain to cause serious bodily injury to Loria.

For these reasons, the Circuit Court's August 1, 2018 Judgment is affirmed.

DATED: Honolulu, Hawaiʻi, March 30, 2021.

On the briefs:

Dwight C.H. Lum,
for Defendant-Appellant.

Gerald K. Enriques,
Deputy Prosecuting Attorney,
County of Maui,
for Plaintiff-Appellee.

/s/ Lisa M. Ginoza
Chief Judge

/s/ Katherine G. Leonard
Associate Judge

/s/ Karen T. Nakasone
Associate Judge